UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MICHELE T. FAHAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:20-CV-134-DCP ) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties. [Doc. 18]. Now before the Court are Plaintiff's Motion for Judgment on the Pleadings [Doc. 21] and Defendant's Motion for Summary Judgment. [Doc. 27]. Michele T. Fahay ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.  PROCEDURAL HISTORY

On August 31, 2016, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on March 31, 2016. [Tr. 15, 220, 222, 250]. After her application was denied initially and upon reconsideration,

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

Plaintiff requested a hearing before an ALJ. [Tr. 142]. An initial hearing was held on October 1, 2018 [Tr. 50–62], and a second hearing was held on April 8, 2019. [Tr. 32–49]. On May 8, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 12–25]. The Appeals Council denied Plaintiff's request for review on April 20, 2020 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 23, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since March 31, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease and bone pain due to chemotherapy associated with breast cancer treatment (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she may stand and walk four hours in an eight-hour day, and sit for six hours in an eight-hour day, and change position as necessary while remaining on task. She may

2

occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. She may never use ladders, ropes, and scaffolds. The claimant may use her right upper extremity to frequently reach overhead, and frequently handle and finger. She must avoid concentrated exposure to fumes and other respiratory irritants and hazards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 30, 1966 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–25].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and

3

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by

the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.  DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff raises one major issue on appeal. Specifically, Plaintiff claims that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ improperly weighed the medical opinion of consultative examiner Robert Blaine, M.D. ("Dr. Blaine"). [Doc. 22 at 7]. Plaintiff argues that

> the ALJ improperly weighed the opinion of [Consultative Examiner] Dr. Blaine as the ALJ mischaracterized the evidence of record, failed to consider the reasons Plaintiff could not obtain treatment, and relied on evidence that predated Plaintiff's alleged onset date and therefore provided no indication of Plaintiff's current level of functioning.

[*Id.*]. Plaintiff claims that this error was not harmless and requests for this Court to vacate the final decision of the Commissioner and remand this matter for an immediate calculation of benefits.

6

[*Id.* at 13]. Alternatively, Plaintiff requests for this Court to remand this matter for further administrative proceedings, including but not limited to a *de novo* hearing and a new decision. [*Id.*]. The Commissioner argues that the ALJ appropriately evaluated Dr. Blaine's consultative medical opinion and that substantial evidence exists in the record to support the ALJ's ultimate RFC decision. Thus, the Commissioner requests for this Court to affirm the ALJ's disability decision. The Court will now address the parties' respective arguments.

Plaintiff states that consultative examiner Dr. Blaine opined to Plaintiff being able to perform a range of sedentary work; however, the ALJ afforded "no weight" to Dr. Blaine's opinion because it was inconsistent with the evidence of record. [*Id.* at 7 (citing [Tr. 718, 23])]. Plaintiff says the ALJ's decision was based on "the record [showing] Plaintiff's medication was 'effective and controlling her pain,' Plaintiff had not sought any additional treatment other than refilling her medications, and the objective evidence showed she did not have muscle weakness but had normal muscle strength and gait." [*Id.* at 8–9 (citing [Tr. 23])]. Further, the ALJ "claimed the 'later medical evidence show[s] that [Plaintiff] is less limited than Dr. Blaine determined on the date of the evaluation.'" [*Id.* at 9 (citing [Tr. 23])]. However, Plaintiff contends that "[w]hile this explanation would provide good reasons for the weight granted to Dr. Blaine's opinion, not a single line of rationale is actually supported by the evidence of record. The ALJ's explanation provides nothing more than a thin façade that cracks under the slightest examination." [*Id.*].

Plaintiff begins her argument in earnest by critiquing the ALJ's contention that the "record shows [Plaintiff] is treated primarily with pain and nerve medication and that the medication is effective in controlling her pain." [Tr. 23]. Plaintiff proffers that the ALJ relied on certain records for this assertion [Tr. 727, 860] but argues that "an accurate review of these records show Plaintiff still suffered pain even with medication compliance." [Doc. 22 at 9 (citing [Tr. 727 ("she does

7

still have a lot of aches and pains"), 860 ("she has a lot of the bone pain")])]. Plaintiff continues, "[g]iven the only records the ALJ could cite to in support of his assertion that Plaintiff's pain was controlled by medication actually showed continued pain, this line of reasoning must fail." [*Id.*]. Plaintiff concludes that because the ALJ cannot cite to *any* point in the record to show Plaintiff's pain was controlled through her medication, his assertion lacks evidentiary support and cannot be a "good reason" for affording no weight to Dr. Blaine's medical opinion. [*Id.*].

Plaintiff then argues that the ALJ cited—as part of the reasoning for his decision—Plaintiff's failure to pursue additional treatment for her pain or degenerative disc disease aside from refilling her prescriptions, but in doing so, the ALJ "wholly ignored Plaintiff's reasoning for not obtaining additional treatment." [*Id.* at 10]. Specifically, Plaintiff alleges the ALJ failed to consider that Plaintiff may have been unable to afford treatment and needed low-cost services. [*Id.*]. To support her assertion, Plaintiff stresses that she lost her insurance, required generic prescriptions so that she could afford her medicine, and required low-cost health services. [*Id.* (citing [Tr. 711, 727, 729, 889])]. Thus, Plaintiff contends that the ALJ violated SSR 16-3p—providing that "we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case"—by failing to discuss Plaintiff's inability to afford additional treatment options. [*Id.*]. Plaintiff asserts that the ALJ erred by solely relying on Plaintiff's lack of treatment despite her apparent inability to pay as a basis to afford less weight to Dr. Blaine's opinion. [*Id.*].

Next, Plaintiff alleges the ALJ erred by only citing to evidence that predated the alleged onset date when he relied on the fact that the objective evidence did not show muscle weakness but instead showed normal muscle strength and normal gait. [*Id.* (citing [Tr. 23, 563, 570, 580, 591])]. Plaintiff cites to an abundance of case law for this allegation of error and asserts that "none of the evidence the ALJ cited to could provide substantial evidence in support of his assertion that

8

Dr. Blaine's opinion was inconsistent with the objective evidence." [*Id.*].

Lastly, Plaintiff claims that the ALJ cited no evidence and offered no explanation to support his assertion that Dr. Blaine's opinion was entitled to less weight because the "later medical evidence show[s] that [Plaintiff] is less limited than Dr. Blaine determined on the date of the evaluation." [*Id.* at 11 (citing [Tr. 23])]. Plaintiff states that the only citation used by the ALJ was to Dr. Blaine's own report which cannot serve as a basis for a reasonable explanation to permit a reviewing party to perform a meaningful review. [*Id.* at 11–12]. Plaintiff's argument is essentially that the ALJ failed to logically connect the evidence to his conclusions and ultimate RFC finding such that the Court can meaningfully review his analysis. *See* [*id.* at 12]. Specifically, Plaintiff argues that the "ALJ's failure to address what, if any, evidence post-dating Dr. Blaine's report shows Plaintiff is less limited than she was at the time of the evaluation, frustrates meaningful review" because "[i]t is impossible to discern what more recent evidence the ALJ finds inconsistent with Dr. Blaine's determination as the ALJ's discussion of the medical evidence is sparse and he provided no citations to any evidence in support." [*Id.*].

As a threshold matter, the Court notes that when considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[2] Opinions from non-treating sources, like Dr. Blaine's consultative opinion, are never assessed for controlling weight but are evaluated using the

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

9

regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Ultimately, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to the opinions of non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii). Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 1996 WL 374180, at *3 (July 2, 1996).

For the reasons detailed below, the Court finds that the ALJ properly evaluated Dr. Blaine's consultative medical opinion and provided adequate reasoning for his decision to afford no weight to it. In his assessment from the December 2016 examination, Dr. Blaine opined that Plaintiff could

10

stand or walk for probably about one and a half hours in an eight-hour day with reasonable rest breaks, limited by fatigue and back pain. She could lift and carry probably no more than about 10 lbs infrequently secondary to chest wall pain and her recent surgery. She could sit for six to eight hours in an eight-hour day with reasonable rest breaks . . . .

[Tr. 718]. The ALJ afforded "little weight" to Dr. Blaine's opinion "because it is inconsistent with the record as a whole and does not account for more recent evidence developed at the hearing level." [Tr. 23].

The ALJ specifically considered that the record showed Plaintiff's pain was being "treated primarily with pain and nerve medication and that the medication is effective in controlling her pain." [*Id.* (citing [Tr. 727, 860] ("She said that most of the time she is pretty well controlled on her current medicine."))]. The ALJ also considered that Plaintiff had not pursued any additional treatment for either her bone pain or degenerative disc disease aside from prescription refills. [Tr. 23 (citing [Tr. 860, 862, 864])]. Additionally, the ALJ reviewed the objective evidence and determined that it demonstrated Plaintiff did not have muscle weakness, had normal muscle strength, and had a normal gait. [Tr. 23 (citing [Tr. 570, 580, 581])]. Finally, the ALJ determined that the "later medical evidence [showed] that the claimant is less limited than Dr. Blaine determined on the date of the evaluation." [Tr. 23 (citing Exhibit 17F)].[3]

---

[3] While Plaintiff argues that the ALJ cited to no evidence other than Dr. Blaine's own report to support this assertion, it is apparent the Plaintiff misconstrues the citation, which merely serves to reference Dr. Blaine's report in the record. In the full analysis, the ALJ discusses later medical evidence that Plaintiff could perform medium work—e.g., the two 2017 state agency medical evaluations. As discussed herein, the ALJ gave little weight to these opinions because he determined that the evidence supported additional limitations being incorporated into Plaintiff's RFC thereby creating a logical bridge between the evidence on record and his RFC determination. *See Pollard v. Astrue*, No. 1:11-CV-186, 2012 WL 2341814, at *5 (S.D. Ohio June 20, 2012) ("The ALJ must build an accurate and logical bridge between the evidence and his conclusion."), *adopted sub nom.*, No. 1:11CV186, 2012 WL 2931310 (S.D. Ohio July 18, 2012).

11

Considering the above, the Court finds that the ALJ presented numerous appropriate reasons for affording no weight to Dr. Blaine's opinion. As the Commissioner argues in his brief [Doc. 28 at 10], the ALJ properly considered the Plaintiff's condition being controlled by her pain and nerve medications. *See, e.g.*, *Baker v. Astrue*, 617 F. Supp. 2d 498, 505–06 (E.D. Ky. 2008) (improvement with medication not consistent with disability); *see also Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585–86 (6th Cir. 2010) ("Impairments that are controllable or amenable to treatment cannot support a finding of disability." (citations omitted)). Further, Plaintiff's bone pain and degenerative disc disease were being treated modestly with only refills of her medications. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (noting the ALJ found the treating physician's "modest treatment regimen for [the claimant]—consisting solely of pain medication—was inconsistent with a finding of total disability").

The ALJ also appropriately considered that Dr. Blaine's opinion was inconsistent with the objective medical evidence showing Plaintiff to have normal muscle strength and normal gait. [Tr. 22–23, 570, 580, 591]. The Commissioner also directs the Court to the fact that—at Dr. Blaine's own examination—Plaintiff was shown to have full grip strength, full muscle strength in her arms and legs, a normal gait, normal tandem walk, normal heel and toe walk, normal single leg stand, and the ability to squat full to the floor. [Tr. 717]. While the ALJ may not disregard a claimant's complaints based solely on objective evidence, it is still one factor to consider. SSR 16-3p; *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (unpublished). Additionally, and as the Commissioner explains, the ALJ also considered the later opinions of two state agency medical consultants, Larry McNeil, M.D., and Francis Yamamoto, M.D., who opined that Plaintiff could perform a range of medium exertional work, yet the ALJ afforded little weight to these opinions because he determined that the evidence supported additional limitations being

12

incorporated into Plaintiff's RFC. [Tr. 22–23]. Plaintiff did not challenge these opinions nor the ALJ's consideration of them in her brief.

Plaintiff argued in her brief that the ALJ's consideration of strength testing from 2015 was flawed because it predated the alleged onset date. The Commissioner argues that, in any case, Plaintiff failed to explain what later evidence exists to contradict the 2015 evidence. The Commissioner states "Plaintiff cannot cite any [evidence], as none of Plaintiff's few medical treatment visits from her surgery in 2016 through 2019 contain findings of reduced strength or an abnormal gait." [Doc. 28 at 12 (citing [Tr. 648–703, 725–32, 748–69, 869–72, 875–80, 889–93])]. The Court agrees with the Commissioner and finds that Plaintiff's argument here is unsupported.

The Court has also considered Plaintiff's argument that one potential reason for having received only modest treatment was due to her inability to afford anything more substantial—a fact that was not expressly discussed by the ALJ. However, the Court does not find this argument to be particularly convincing. As the Commissioner argues, Plaintiff had been able to fill prescriptions for many of her medications [Tr. 711], was able to switch from brand name medications to cheaper generic ones at her request [Tr. 727, 729], and she successfully sought treatment at the public health department, which indicated that she was able to get lower cost treatment earlier than when she sought it. [Tr. 889–93]. Furthermore, the Commissioner argues that Plaintiff's "public health provider noted that Plaintiff was eligible for the Tennessee Breast and Cervical Screening (BCS) Program, which helps low-income, uninsured women gain access to breast and cervical cancer screening and diagnostic services." [Doc. 28 at 12 (citing [Tr. 889])]. In any case, Plaintiff argues in her brief that the ALJ did not consider her financial status when he considered her modest treatment with Plaintiff specifically pointing to her need for generic medications and low-cost treatment, which Plaintiff states she subsequently sought out and

13

received. Plaintiff also argues that she lost her insurance coverage, but she alludes to no specific treatments she was unable to receive or was denied based on that fact. That considered, the Court finds Plaintiff's argument on this point to be without merit.

Therefore, the Court finds that the ALJ properly considered the evidence of record and his ultimate RFC finding is supported by substantial evidence. This includes the ALJ's decision to afford no weight to Dr. Blaine's consultative medical opinion for which he provided sufficient explanation.

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 21**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 27**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge